Case 3:06-cv-01754-NLS   Document 34   Filed 08/18/08   PageID.354   Page 1 of 8

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE DORN-KERRI,<br><br>          Plaintiff,<br>v.<br><br>SOUTH WEST CANCER CARE,<br><br>          Defendant. | Civil No.06cv1754-NLS<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCLOSURE OR DISCOVERY**<br><br>[Doc. No. 28] |

  Before this Court is Plaintiff Diane Dorn-Kerri's Motion to Compel Defendant South West Cancer Care to supplement its response to her request for production of certain medical billing records [Doc. No. 28]. Defendant opposes the motion [Doc. No. 31]. The Court finds the issues appropriate for a decision on the papers and without oral argument pursuant to Local Rule 7.1(d)(1). For the reasons explained below, the Court **DENIES** Plaintiff's Motion to Compel.

## BACKGROUND

  This action arises from events alleged to have occurred between March 2004 and March 2005. On March 15, 2004, Defendant South West Cancer Care ("Defendant") hired Plaintiff to fill the position of "Insurance Billing Representative," responsible for managing accounts receivable, billing, and collections. (*See Letter Complaint*, Doc. No. 1, at 4, 7.) Plaintiff alleges that during the approximately one year that she held the position, her supervisors subjected her to verbal racial harassment and accompanying workplace hostility. (*Id.* at 4.) She also alleges that during her employment, she advised her boss that the company was engaging in unlawful billing practices. (*Id.*) After receiving an

1  unfavorable performance review in February 2005, and based on the alleged racial harassment, Plaintiff
2  notified her supervisors that she planned to file a complaint with the Equal Employment Opportunity
3  Commission ("EEOC").  On March 25, 2005, Defendant terminated Plaintiff's employment.  (*Id*.)  On
4  May 13, 2005, Plaintiff filed a complaint against Defendant with the California Department of Fair
5  Employment and Housing ("DEFH"), in which she claimed that her termination had been the result of
6  racial discrimination and retaliation for having protested unlawful billing practices.  (*Id*. at 4-8.)  On
7  May 17, 2006, DEFH found that she lacked probable cause to prove a violation of the applicable
8  statutes, and her case was closed.  (*Id*. at 11-12.)  On June 6, 2006, the EEOC notified Plaintiff that the
9  Commissioner had adopted the findings of DEFH, her file was closed, and she was notified of her right
10 to sue.  (*Id*. at 9.)  On August 29, 2006, Plaintiff, proceeding *pro se*, filed her federal complaint.

11  Despite Plaintiff's unrepresented status, this case has proceeded on a regular litigation schedule
12 since January 23, 2007, when Defendant filed its answer to the complaint [Doc. No. 9].  The Court
13 conducted an Early Neutral Evaluation Conference in March 2007.  The case did not settle, the Court
14 scheduled Rule 26 deadlines, and held a Case Management Conference on June 15, 2007, at which time
15 Plaintiff advised the Court that she would proceed *pro se*.  A Scheduling Order regulating discovery and
16 pretrial proceedings issued that same date, and the parties did not contact or otherwise appear before the
17 Court again until May 14, 2008 at the final pretrial Mandatory Settlement Conference.  The case did not
18 settle, and the parties began preparing for trial.

19  At the request of the District Judge presiding over the case at the time, the Court held a second
20 Case Management Conference on June 13, 2008.  During the conference, the parties consented to
21 proceed before the undersigned for all purposes, including trial.  The Court discussed final pretrial
22 preparations and a pretrial schedule, and inquired whether either party had any final discovery needs.
23 Plaintiff advised the Court that she required a supplemental response to one of her previously
24 propounded document production requests.  The specific request to which she alluded during the June
25 13, 2008 conference, Request No. 7,[1] states:

26
27
28

---

[1] On May 31, 2007, Plaintiff served Defendant with her first set of requests for production.

> "Full and complete copy of the aging summaries[2] (to exclude patient names and personal information by means of blacking information out on summaries) please arranged by procedures performed, dates of service and payer (e.g.) Medical/Medicare and all Third Party Payers contracted with South West Cancer Care for the services provided and billed in the year 2004 and 2005 that were issued to me for review and collections during my period of employment."

(*See Plaintiff's Motion to Compel, Separate Statement Briefing*, 3.) Defendant provided a response to the request on July 2, 2007, which states:

> "Each aging report/summary is generated only for the purpose of 'working it' and therefore is destroyed/shredded after the accounts have been 'worked on' and/or paid. All of the aging reports requested herein have been finished and destroyed. This is standard operating procedure for SWCC."

(*Defendant's Opposition*, 2.) This was the only discovery issue raised by Plaintiff at the June 13, 2008 conference.

The Court advised Plaintiff at the close of the conference that she would be permitted to seek a supplemental response to the request, with the aid of an onsite inspection of Defendant's pertinent computer systems. Plaintiff raised no other discovery issues at the conference, and accordingly the Court issued a post-conference order allowing the computer inspection to go forward at Defendant's offices, with Plaintiff present at the inspection. In its order, the Court clarified that once the parties complete the site inspection, discovery would be closed. (*See June 13, 2008 Order of the Court*, Doc. No. 23, para. 1.) The Court permitted Plaintiff to file the instant motion only in so far as it seeks an order compelling a further response to Request No. 7, the only discovery issue remaining before the Court.[3]

---

[2] An accounts receivable aging report shows the amounts owed to the billing company by its customers, including the length of time the amounts have been outstanding. Typically, the aging report categorizes receivables as "current," "30 days," "60 days," "90 days," and "120 days and over." The purpose of the report is to show the billing company what receivables need to be dealt with more urgently because they have been overdue longer.

[3] To the extent that Plaintiff moves for an order compelling supplemental responses to Request Nos. 2, 3, 4, and 8, her motion is denied. The discovery period in this case expired on January 14, 2008. (*See Court's June 15, 2007 Scheduling Order*, Doc. No. 16, para 6.) Defendant's responses to Request Nos. 2-4 and 8 were not disputed by Plaintiff during the discovery period, the requests pertain to discovery issues not raised by Plaintiff at the June 13, 2008 Case Management Conference, and therefore they were not included in the extremely narrow scope of discovery the Court allowed to go forward after the June 13, 2008 conference. In addition, Defendant represents to the Court in its opposition brief that it has no additional documents to provide in response to these requests. (*Defendant's Opposition*, 6.)

# **DISCUSSION**

A.     *Plaintiff's Motion to Compel and Defendant's Opposition*

Plaintiff asserts that her motion should be granted because her retaliation claim is based in part on the dispute that arose between herself and her supervisors over the accounts receivable aging reports for the period immediately prior to and at the time of her termination. (*Plaintiff's Separate Statement Briefing*, 4.) According to Plaintiff, the aging reports from February 2004 through February 2005, if reproduced accurately, will reflect the type of billing problems that she alleges occurred during her employment, as well as the unlawful billing practices of Defendant. (*Id*.)

Defendant opposes the motion, arguing that it has met its discovery obligations with respect to the requested aging reports and that nothing further can be produced given the constraints of the software used to manage information. (*Defendant's Opposition*, 6.) Defendant notes that in compliance with the Court's post-conference order, Plaintiff visited Defendant's offices and participated in an inspection of Defendant's computer systems. (*Id*. at 4.) Prior to the inspection, Defendant searched its archived tangible files for the requested aging reports, and found no hard copies in its stored files from the time period in question. Defendant also consulted with the manufacturer of the medical billing software which the company uses to manage its accounts receivable and generate aging reports. The manufacturer informed Defendant that the program is not capable of reproducing aging reports from a previous time period, due to the evolving nature of the information contained in the reports, and their characteristic of being constantly updated as payments are received, logged into the software, and account statuses are altered to reflect the new information. (*Id*. at 4.)

During the onsite inspection, Defendant allowed Plaintiff to dictate instructions from her own software expert to Defendant's employee regarding how to regenerate the reports. Neither Plaintiff's expert's process, nor any process attempted by Defendant, succeeded in reproducing the aging reports. Finally, when the onsite inspection failed to produce any supplemental information relating to Plaintiff's discovery request, Defendant offered to run a general time and date delimited search in the system in an attempt to collect any data relevant to her request and to provide the appropriately redacted information, if any, to Plaintiff within two weeks. (*Id*. at 5.) Defendant sent the retrieved information to Plaintiff as promised. (*Id*., Ex "3.") Plaintiff contacted Defendant on July 13, 2008 requesting additional

production of documents not previously requested at any point in the litigation. (*Id.*, Ex "4.") Defendant responded by refusing to provide the requested documents based on the belief that the request was overly broad and burdensome, as well as irrelevant, and reminded Plaintiff that discovery in the case was officially closed. (*Id.* at 5, Ex "5.") Plaintiff responded by filing the instant motion on July 21, 2008.

B.      *Legal Standard and Analysis*

The Federal Rules allow for broad discovery in civil actions: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Here, this requirement must be viewed against the Ninth Circuit's repeated admonition that courts construe *pro se* pleadings and motions liberally. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003). In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections. *DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

Plaintiff's Request No. 7 originally sought hard copies of the aging reports for the accounts she managed while employed by Defendant from February 2004 through February 2005. Plaintiff states in her moving papers that the reports contain information related to her retaliation claim. (*Plaintiff's Separate Briefing Statement*, 4.) In her Complaint, Plaintiff alleges that Defendant fired her in retaliation for Plaintiff addressing with her supervisors:

> "an area of my work that proved to be a problem as a direct result of unlawful billing practices. This law in question regulates the medical practitioners' choices in regards to codes and fees selected to describe the doctor's level of service that is measured against the documentation of service."

(*Plaintiff's Letter Complaint*, 2.) Plaintiff further alleges in her Complaint that when she disputed her supervisors' accusations that the problems in the aging reports were not due to unlawful billing but rather revealed her poor performance and personal problems, she disputed their accusations and as a

result was fired. (*Id*. at 3.) The Court finds that Plaintiff has met her initial burden of demonstrating that the requested aging reports from the time period during which Defendant employed her as a billing administrator are relevant to the case. Accordingly, the burden shifts to Defendant to show the Court why it should not be compelled to supplement further its response to her discovery request

In its initial response to the request, Defendant advised Plaintiff that in the ordinary course of business the hard copies of the reports are shredded or otherwise destroyed once the accounts contained in them have been paid and are no longer "aging." (*Defendant's Opposition*, 4.) Defendant searched its tangible archived files to ensure that no copies of the reports still existed. They found none. Plaintiff does not dispute Defendant's assertion that hard copies no longer exist, and acknowledged during the June 13, 2008 Case Management Conference that an inspection of Defendant's medical billing software would be the appropriate method to determine (1) whether the accounts receivable data from the period of her employment remains in Defendant's computer systems, and (2) whether the aging reports could be reproduced by the software from which they were generated originally, if the relevant data remained accessible electronically. As such, Plaintiff's motion seeks an order compelling production of information that is no longer in tangible document form, and therefore if able to be produced, can only be done so electronically. This is referred to in the newly amended Federal Rules of Civil Procedure as electronically stored information ("ESI").

On December 1, 2006, several amendments to the Federal Rules of Civil Procedure related to electronic discovery went into effect. Rule 34 specifies the procedure for producing tangible documents as well as ESI. Section (a)(1) provides:

> (a) A party may serve on any other party a request within the scope of Rule 26(b):
>
>> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>>
>>> (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
>>>
>>> (B) any designated tangible things.

Rule 26, referenced in Rule 34, generally governs the duty of parties to disclose information during discovery. Section (b)(2)(B) states:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

The above section refers parties and practitioners to the limitations on disclosing requested information described in Rule 26(b)(2)(C), including whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. Defendant does not argue that any of these limitations apply in this case. Rather, Defendant explains in its opposition the nature of the ESI requested by Plaintiff, the manner in which the ESI is stored and managed by the medical billing software application, and the inability of the software to regenerate an historical aging report, as verified by its manufacturer. Simply stated, Defendant argues that the discovery requested by Plaintiff no longer exists, even electronically.

Plaintiff seeks ESI from a specific period of time, preserved in a specific format. Defendant could have provided Plaintiff with data in the requested format, i.e. an aging report on their current accounts receivable, however the data compilation would not have been germane to the relevant time period. An aging report generated any time after Plaintiff's termination is not responsive to Plaintiff's discovery request, which specifically requested production of reports from 2004/2005. Instead, as a final means of supplementing its response to the best of its ability, Defendant provided Plaintiff with historical data gathered from its accounts receivable aged over 120 days in an attempt to capture discreet information from the relevant time period. (*Defendant's Opposition*, 5, Ex "3.") Defendant asserts that this production constituted its last best effort to respond to Request No. 7.

Without evidence to the contrary, and based on its supporting exhibits and declaration of counsel, the Court is satisfied that Defendant has performed its discovery obligations to the best of its ability. The software that manages the ESI sought by Plaintiff performs continuous updating as new

1  billing information is received by the system, automatically changing the status of accounts and
2  therefore the current aging report, rendering a report from a specific time and date impossible to
3  reproduce once new data enters the system.  If a document or thing does not exist, it cannot be in the
4  possession, custody, or control of a party and therefore cannot be produced for inspection.  *See Dunn v.*
5  *Trans World Airlines, Inc*., 589 F.2d 408 (9th Cir. 1978) (holding that the district court did not abuse its
6  discretion in not imposing any sanctions for the plaintiff's failure to produce medical records which
7  were no longer in existence).[4]

8  The Court finds that although Plaintiff established that the information contained in the aging
9  reports from the February 2004 – February 2005 time period would have been relevant to this litigation,
10 Defendant has met its burden of demonstrating to the Court that the reports no longer exist as tangible
11 documents and cannot be regenerated electronically.

## CONCLUSION

13 Based on the foregoing, Plaintiff's Motion to Compel [Doc. No. 28] is **DENIED**.  The parties
14 are reminded that discovery in this case is closed and the thirty-day period for filing motions to compel
15 has expired.  As such, no further discovery motions shall be considered by the Court.

16 **IT IS SO ORDERED**.

17 DATED:  August 18, 2008

18 _____
   Hon. Nita L. Stormes
19 U.S. Magistrate Judge

---

[4] Defendant correctly notes in its opposition that it had no duty to preserve the aging reports, either tangibly or electronically, because a preservation obligation only arises once a "party has notice that the evidence is relevant to litigation – most commonly when the suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (*citing Turner v. Hudson Transit Lines, Inc*., 142 F.R.D. 68, 72-73 (S.D.N.Y.1991)). Here, Defendant's earliest indication of potential litigation would have been subsequent to Plaintiff's termination, by which time the aging reports in tangible form had been shredded and electronically already would have been updated to the point of being irrelevant to Plaintiff's claims.